UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN RE APPLICATION OF CARATUBE INTERNATIONAL OIL COMPANY, LLP | Misc. Action No. 10-0285 (JDB) |
|---|---|

MEMORANDUM OPINION

Caratube International Oil Company, LLP is currently engaged in international arbitration against the Republic of Kazakhstan. Caratube has filed a petition in this Court seeking discovery "for use in a proceeding in a foreign or international tribunal" pursuant to 28 U.S.C. § 1782. For the reasons explained below, the Court will deny the petition.

BACKGROUND

I.    Factual Background

In 2002, Caratube became, through an assignment, a party to a contract with Kazakhstan to explore for and produce oil. See Kazakhstan's Mot. to Intervene and Opp'n to Caratube's Pet. for Discovery ("Kazakhstan's Opp'n") [Docket Entry 15], Decl. of Peter Wolrich ("Wolrich Decl."), ¶ 4. Kazakhstan terminated this contract in 2008, purportedly because Caratube breached the agreement. See id. at ¶ 5. Caratube maintains, however, that "the contract was terminated as part of the fall-out of a nasty family political fight within Kazakhstan." Caratube's Pet. for Discovery ("Caratube's Pet.") [Docket Entry 1], at 3.

According to Caratube, its troubles with the Kazakh government stem from a dispute between Kazakhstan's President, Nursultan Nazarbayev, and his former son-in-law, Rakhat Aliyev. Caratube's Pet., Ex. 6 (Caratube's Request for Arbitration ("Request for Arbitration")), at

12. Caratube contends that, after Aliyev announced in 2007 that he intended to run against Nazarbayev in the 2012 presidential election, "the Nazarbayev regime sought out and punished anyone related to Aliyev, however remotely." Caratube's Pet. at 4. The connection to this case is that Aliyev's sister is married to Issam Hourani, whose brother Devincci owns 92% of Caratube. See Request for Arbitration at 12-13; Caratube's Pet. at 4. Citing this connection, Caratube contends that its relationship with Kazakhstan "deteriorated in direct correlation with the rise of political tensions between Nazarbayev and Aliyev." Caratube's Pet. at 4. It also maintains that Kazakhstan has undertaken a campaign of harassment against it. Id.

In June 2008, pursuant to a bilateral investment treaty between the United States and Kazakhstan, Caratube filed a request for international arbitration with the International Centre for Settlement of Investment Disputes ("ICSID") to resolve its contract dispute with Kazakhstan. The ICSID Arbitral Tribunal ("Tribunal") held its first session on April 16, 2009, adopting a schedule that required the parties to exchange document requests by January 15, 2010, and to produce discovery by April 16, 2010. See Caratube's Pet., Ex. 28 (Minutes of the First Session of the Arbitral Tribunal ("First Session Minutes")), ¶¶ 4.7-14.11. The parties were to complete briefing by the end of 2010, and a hearing date was scheduled for February 2011. See id. at ¶¶ 14.12-14.19.

On April 26, 2010, the Tribunal issued its second procedural order. See Wolrich Decl., Ex. E ("Procedural Order No. 2"). This Order resolved several discovery disputes between the parties and clarified their discovery obligations. See id. at ¶ 2.1. Pushing back the discovery deadline somewhat, it required discoverable material to be disclosed "within four weeks from the date this Order is received." Id. (emphasis removed).

Caratube filed this petition two days later. Along with its petition, Caratube submitted to this Court proposed subpoenas duces tecum that it seeks to serve on Dr. Alexander Mirtchev, Krull Corporation UK, GlobalOptions, Inc., BGR Group, and Policy Impact Communications ("PIC").[1] Each of these individuals and entities, according to Caratube, "has done or is doing various acts on behalf of the Republic of Kazakhstan and the Nazarbayev family that directly impact Caratube and members of the Hourani family." Caratube's Pet. at 10-11.

The next day, Caratube informed the Tribunal of this action and requested a six-month extension of the arbitration schedule. See Caratube's Response in Supp. of Pet. ("Caratube's Reponse") [Docket Entry 24], Ex. B (Apr. 29, 2010 Letter from Caratube to Tribunal), at 2-5. Kazakhstan opposed the request for an extension, and asked the Tribunal to order Caratube to cease and desist from its section 1782 petition in this Court. See Caratube's Response, Ex. A (May 10, 2010 Letter from Kazakhstan to Tribunal), at 4-5.

The Tribunal issued its third procedural order on May 26, 2010. See Wolrich Decl., Ex. F ("Procedural Order No. 3"). In that order, the Tribunal expressed displeasure with Caratube's unilateral actions, but nonetheless declined to require Caratube to cease and desist:

> [W]hilst the Tribunal might have been minded to find that its prior consent should have been sought by [Caratube] before the presentation of its Section 1782 petition, the Tribunal concludes that it is not necessary for it to order Claimant to cease and desist from the US action. A party starting a Section 1782 procedure before the US courts does so and chooses the time for such a petition at its own risk. But the existence of such a petition to domestic courts cannot interfere with the Tribunal's maintenance of its authority over the arbitral procedure and with the timetable established with the consent of the Parties.

---

[1] According to Caratube, Mirtchev is an advisor to Kazakhstan and the Nazarbayev family, and is associated with Krull Corporation and GlobalOptions. See Caratube's Pet. at 5-9. BGR Group and PIC are lobbying firms whom Caratube contends are working for Kazakhstan. See id. at 9-10.

Id. at ¶ 2.6.  The Tribunal also rejected Caratube's request to delay the arbitration proceedings.
See id. at ¶ 2.4.  Finally, the Tribunal reserved the question of whether it would admit any documents obtained through the section 1782 petition:

> Should Claimant, at a later stage of this arbitral procedure apply to admit any document produced in the Section 1782 procedure, this Tribunal will have to decide on such an application having regard to its obligation to accord procedural fairness to the Parties and particularly to [Kazakhstan's] right to object and to reply to such a document.

Id. at ¶ 2.7.

Shortly after Caratube filed its petition, this Court, seeking to streamline these proceedings, issued an Order requiring the respondents to this action to show cause as to why it should not grant Caratube's petition and issue the proposed subpoenas.  See May 10, 2010 Order [Docket Entry 5], at 1.  Respondents filed various responses with the Court: Krull Corporation and Dr. Mirtchev submitted a joint opposition; BGR Group filed a motion for a protective order; and GlobalOptions filed an opposition.[2]  PIC has agreed to produce certain documents, and the Court has issued a stipulated protective order governing that production.  See Stipulated Protective Order [Docket Entry 33].  Kazakhstan has filed a motion to intervene, as well as an opposition to the petition.[3]

---

[2] The Court's May 10, 2010 Order required respondents to show cause by May 28, 2010. See May 10, 2010 Order at 1.  On June 2, 2010 -- before GlobalOptions's response to the Court was docketed -- Caratube moved for an order requiring GlobalOptions to comply with Caratube's proposed subpoena.  See Caratube's Mot. for Order [Docket Entry 16].  Because GlobalOptions's response to the Court's Order was docketed on June 3, 2010, GlobalOptions and Caratube dispute whether this response was timely.  Whatever the merits of that dispute, the Court will deem GlobalOptions's response timely filed, and will deny Caratube's motion.

[3] Neither Caratube nor any other party opposes Kazakhstan's motion to intervene, see Caratube's Response at 3, and the Court will grant the motion.

## DISCUSSION

Caratube brings its petition pursuant to 28 U.S.C. § 1782(a), which enables district courts to order discovery "for use in a proceeding in a foreign or international tribunal." This statute authorizes a district court to permit discovery when (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person. See Schmitz v. Bernstein, Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004).

The parties do not dispute that the respondents to this petition are each located in the District of Columbia, or that Caratube is an interested person in the international arbitration proceedings. They do, however, vigorously contest whether the ICSID arbitration is "a foreign or international tribunal" for purposes of section 1782. But even assuming that it is, and that the Court thus has the authority to grant Caratube the discovery it seeks, the Court concludes that the petition should be denied.

Even where section 1782's threshold requirements are met, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004); see also id. at 247 ("§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals . . . ."). Rather, the Supreme Court has identified several factors for courts to consider in evaluating petitions under section 1782. A court could weigh, for example, whether "the person from whom discovery is sought is a participant in the foreign proceeding." Id. at 264. Courts also "may take into account the nature of the foreign tribunal, the character of

the proceedings underway abroad, and the receptivity of the foreign . . . court . . . to U.S. federal-court judicial assistance." Id. Additionally, "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Id. at 264-65. And "unduly intrusive or burdensome requests may be rejected or trimmed." Id. at 265. In examining these factors, district courts should consider "'the twin aims of [section 1782]: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Schmitz, 376 F.3d at 84 (quoting In re Application of Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997)). Here, an evaluation of those factors leads the Court to deny Caratube's petition.

  A. <u>Parties from whom discovery is sought</u>

  The Court first considers whether "the person from whom discovery is sought is a participant in the foreign proceeding." Intel, 542 U.S. at 264. If so, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Id. Here, none of the respondents to Caratube's petition is a party to the ICSID arbitration. This factor, then, weighs in favor of granting the petition.

  B. <u>Nature of the foreign tribunal, character of the proceedings, and receptivity of tribunal to U.S. judicial assistance</u>

  With respect to this factor, although the Tribunal may be receptive to discovery obtained through this section 1782 proceeding, the nature of the Tribunal, as well as the character of the arbitration proceedings currently underway, counsel against granting the petition.

  A foreign tribunal's willingness to accept evidence obtained through the section 1782

process generally weighs in favor of granting such petitions. See In re Application of OOO Promnefstroy, Misc. No. M 19-99, 2009 WL 3335608, at *7-8 (S.D.N.Y. 2009). In evaluating a tribunal's willingness, courts "do not believe that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is desirable in order to ascertain the attitudes of foreign nations to outside discovery assistance." In re Application of Euromepa, S.A., 51 F.3d 1095, 1099 (2d Cir. 1995); see also Intel, 542 U.S. at 263 ("[Section 1782] does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here. Comparisons of that order can be fraught with danger."). Rather, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." In re Application of Euromepa, 51 F.3d at 1100.

Here, there is no "authoritative proof" that the Tribunal will reject discovery obtained through this section 1782 petition. Although expressing concern for the maintenance of its control of the arbitration proceedings, see Procedural Order No. 3 at ¶ 2.6, the Tribunal declined to order Caratube to cease and desist from pursuing this petition, and it reserved judgment on whether it would accept as evidence documents obtained through this section 1782 proceeding, see id. at ¶ 2.7 ("[T]his Tribunal will have to decide on such an application having regard to its obligation to accord procedural fairness to the Parties and particularly to Respondent's right to object and to reply to such a document."). And respondents have not identified any rule or regulation that would prevent the Tribunal from accepting such evidence.

The nature of the Tribunal, however, counsels against granting Caratube's petition. Pursuant to a bilateral investment treaty between Kazakhstan and the United States, Caratube had

the option of arbitrating this dispute under the ICSID rules, or in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law, or in "any other arbitration institution, or in accordance with any other arbitration rules, as may be mutually agreed between the parties to the dispute." Wolrich Decl., Ex. B (Treaty Between the United States and Kazakhstan Concerning the Reciprocal Encouragement and Protection of Investment), Art. VI, ¶ 3. Caratube also could have brought an action in the Kazakhstan courts. Id., Art. VI, ¶ 2(a). Yet Caratube chose to bring this dispute before an ICSID arbitration panel. Parties to an arbitration are "free to set the procedural rules for arbitrators to follow." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 39 (1987). This Court is reluctant, then, to interfere with the parties' bargained-for expectations concerning the arbitration process. See Kazakhstan v. Biedermann Int'l, 168 F.3d 880, 883 (5th Cir. 1999) (noting, in concluding that § 1782 does not apply to private international arbitrations, that "[r]esort to § 1782 in the teeth of such [arbitration] agreements suggests a party's attempt to manipulate United States court processes for tactical advantage"). In fact, as discussed below, Caratube proposed (and the Tribunal adopted) specific guidelines for the discovery process in this arbitration.

The character of the proceedings currently underway also weighs against granting Caratube's petition. Caratube filed its petition over a year after the Tribunal set a detailed schedule governing the arbitration proceedings. Yet Kazakhstan contends -- and Caratube does not dispute -- that prior to this petition "[t]here was no discussion between the parties concerning the need or opportunity for non-party discovery, and neither party had made any written submission [to the Tribunal] requesting the opportunity for non-party discovery." Wolrich Decl. at ¶ 12. Indeed, Caratube's petition came only two days after the Tribunal ruled on various

disputes relating to the parties' document production, and less than a month before discovery between the parties was to close. See Procedural Order No. 2 at ¶¶ 2.1-2.2; see also Procedural Order No. 3 at ¶ 2.5 (the arbitration is "late in the procedure"). Caratube does not defend its delay in filing its petition, and its tardiness in doing so -- especially without prior notice to the Tribunal -- supports denying the petition. See In re Digitechnic, Civ. No. C07-414, 2007 WL 1367697, at *5 (W.D. Wash. 2007) (denying section 1782 petition in part because of petitioner's "complete failure to justify the timing of [its] request"); see also Bull HN Info. Sys. v. Hutson, 229 F.3d 321, 329 (1st Cir. 2000) ("The purpose of arbitration in large part is to have simplified, expedited proceedings and courts should be reluctant to adopt rules which interfere with the accomplishment of those purposes.").[4]

In sum, while the Tribunal appears somewhat receptive to U.S. judicial assistance, the nature of the arbitration tribunal and the character of those proceedings, including the discovery schedule there, suggest that the petition should be denied.

### C. Attempts to circumvent foreign proof-gathering restrictions

The Court next evaluates whether Caratube's petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65. Courts have "refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court." In re Application of Euromepa, 51

---

[4] Mirtchev and Krull Corporation suggest that the Court should also consider the "substantial possibility that the Tribunal will conclude that it does not have jurisdiction over the arbitration." Krull's Response to Caratube's Pet. [Docket Entry 13], at 6. But this question is irrelevant to Caratube's petition: "§ 1782(a) requires only that a dispositive ruling . . . be within reasonable contemplation." Intel, 542 U.S. at 259.

F.3d at 1098 (quoting In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992)). Nonetheless, "the district court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction." In re Application of Babcock Borsig AG, 583 F. Supp. 2d 233, 241 (D. Mass. 2008). Here, the evidence suggests that Caratube is using section 1782 in an attempt to circumvent the Tribunal's control over the arbitration's procedures, and this factor thus weighs against granting the petition.

ICSID's rules dictate the scope of discovery in its arbitration proceedings: "Except as the parties otherwise agree, the Tribunal may, if it deems it necessary at any stage of the proceedings, (a) call upon the parties to produce documents or other evidence, and (b) visit the scene connected with the dispute, and conduct such inquiries there as it may deem appropriate." ICSID Rules, Art. 43. Here, Caratube proposed, and Kazakhstan and the Tribunal agreed, that the arbitration's discovery process should be guided by "the [International Bar Association ("IBA")] Rules on the Taking of Evidence in International Commercial Arbitration adopted by a resolution of the IBA Council on 1 June 1999" ("IBA Rules"). See First Session Minutes at ¶ 15.4; see id., Annex 2 (parties' joint submission) at ¶ 15.4. And the Tribunal reiterated -- two days before Caratube filed this petition -- that the IBA Rules "can be considered as a guideline giving indications regarding the relevant criteria for what documents may be requested and ordered to be produced." Procedural Order No. 2 at ¶ 1.2.

The IBA Rules describe how to obtain discovery from non-parties:

> If a Party wishes to obtain the production of documents from a person or organization who is not a Party to the arbitration and from whom the party cannot obtain the documents on its own, the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps are legally available to obtain the requested documents. The Party shall identify the documents in sufficient detail

and state why such documents are relevant and material to the outcome of the case. The Arbitral Tribunal shall decide on this request and shall take the necessary steps if in its discretion it determines that the documents would be relevant and material.

See Wolrich Decl., Ex. D (IBA Rules), Rule 3.8. Thus, the guidelines that Caratube proposed and the Tribunal accepted instructed Caratube to "ask [the Tribunal] to take whatever steps are legally available to obtain the requested documents." Id. (emphasis added); cf. ICSID Rules, Art. 44 ("If any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question.").[5] Had Caratube followed these guidelines, the Tribunal -- if it believed the requested documents to be "relevant and material" -- could have sought discovery assistance on its own through section 1782. See 28 U.S.C. § 1782(a) ("The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal . . . ."). But by unilaterally filing this petition, Caratube has side-stepped these guidelines, and has thus undermined the Tribunal's control over the discovery process.[6] This weighs against granting Caratube's section 1782 petition. See Intel, 542 U.S. at 264-65.

---

[5] Although Caratube does not make this argument in its briefs, it previously contended in a letter to the Tribunal that the IBA Rules anticipate that parties may seek unilateral discovery via a section 1782 petition. See Caratube's Reponse, Ex. C (May 17, 2010 Letter from Caratube to Tribunal), at 7. Specifically, it noted that IBA Rule 3.8 applies only to discovery from entities "from whom the party cannot obtain the documents on its own," and asserted that this text anticipates that parties may file section 1782 petitions to obtain such discovery on their own. See id. at 7-9. The Court disagrees: the better reading, given the context of this rule, is that the sentence refers to efforts to obtain documents without legal process.

[6] Caratube notes that the Tribunal declined to order Caratube to cease and desist from this action, and states that "[s]o long as the Tribunal does not consider [its petition] out of bounds, there is no reason why this Court should." Caratube's Response at 15. But the question of whether the Tribunal believed that Caratube should be permitted to proceed with its petition is far different than whether this Court should, in its discretion, grant the petition.

## CONCLUSION

None of the respondents to this action are parties to the underlying arbitration. And the Tribunal appears somewhat open to admitting documents acquired through this petition. But the Court views as substantially more important the facts that this arbitration is already "late in the procedure," and that Caratube appears to be circumventing the Tribunal's control over its own discovery process. Weighing these factors, the Court declines to order discretionary discovery, and will therefore deny Caratube's section 1782 petition.[7] A separate Order accompanies this Memorandum Opinion.

                                                        /s/
                                                JOHN D. BATES
                                            United States District Judge

Dated: August 11, 2010

---

[7] Respondents contend that Caratube also has not shown that they are likely to have responsive documents, and that Caratube's proposed subpoenas are unduly burdensome. See Intel, 542 U.S. at 265 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed."). Although Caratube has shown a basis for at least some of its requests, because the Court has concluded that the section 1782 petition should be denied, it need not evaluate whether Caratube's proposed subpoenas are appropriately tailored.